IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

MATTHEW JUSTICE and TONYA JUSTICE,
individually and as parents, guardians, and
next of friends of T.J., a minor,

    Plaintiffs,

v.                                                  CIVIL ACTION NO. 5:19-cv-00320
                                                          (Judge:        )

TEE-ZED PRODUCTS, LLC,
a North Carolina company, and
LOWE'S HOME CENTERS, LLC,
a North Carolina company,

    Defendants.

## COMPLAINT

For their Complaint against the defendants, the plaintiffs allege and state as follows:

## PARTIES

1.     The plaintiffs, Matthew Justice and Tonya Justice, individually, insofar as they have incurred economic damages and loss of consortium of their daughter T.J. as a proximate result of the events giving rise to this action, and as parents, guardians, and next of friends of their minor daughter, T.J., are residents and citizens of Oceana, Wyoming County, West Virginia.

2.     The defendant, Tee-Zed Products, LLC, ("Tee-Zed") is a North Carolina limited liability company with its principal place of business in Greensboro, North Carolina, and at all times relevant, was in the business of designing, manufacturing, re-manufacturing, modifying and/or altering, fabricating, packaging, shipping, selling, servicing, and/or distributing

1

Dreambaby Cabinet and Drawer Safety Catches through its "Dreambaby" brand in the State of West Virginia, including but not limited to the subject Dreambaby 12 Pack Safety Catches.

3. The defendant, Lowe's Home Centers, LLC, ("Lowe's") is a North Carolina limited liability company with its principal place of business in Wilkesboro, North Carolina, and at all times relevant, was in the business of selling child safety products in the State of West Virginia, including the subject Dreambaby safety catch. At all times relevant hereto, defendant Lowe's had actual knowledge of the defect in the subject Dreambaby safety catch, which is the proximate cause of the harm for which recovery is sought in this matter.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this civil matter pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000, exclusive of costs and interest, and involves citizens of different states.

5. Defendants availed themselves to the jurisdiction of this Court pursuant to W. Va. Code § 56-3-33 and W. Va. Code § 31D-15-1501(d)(3), by doing, personally and through its agents, the following acts:

    a. Committing a tortious act within this state by selling and/or delivering a defective product for placement into the West Virginia stream of commerce for ultimate users;

    b. By manufacturing, testing, selling, distributing, assembling and/or servicing Tee-Zed products through its Dreambaby brand, including the subject Dreambaby safety catch, to or for persons, firms and/or corporations in this state *via* its distributors, wholesalers, and brokers. Such Tee-Zed products, including the subject safety catch, were used by West Virginia consumers in the ordinary course of commerce and trade;

    c. By deriving substantial revenues in this state;

    d.       The acts or omissions of the defendants caused injuries to persons in West Virginia, including plaintiffs' minor daughter, T.J.;

    e.       By engaging in the solicitation of activities in West Virginia to promote the sale, consumption, use, maintenance, distribution, assembly and repair of Tee-Zed products, including the subject Dreambaby safety catch, which is the subject of this Complaint; and

    f.       By manufacturing, testing, selling, distributing or assembling Tee-Zed products, including the subject Dreambaby safety catch, which is the subject of this Complaint, with knowledge or reason to foresee that Tee-Zed products, including the subject Dreambaby safety catch, would be shipped in interstate commerce and would reach the market of West Virginia users or consumers.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1931(a) in that a substantial portion of the events giving rise to the claims herein took place within the Southern District of West Virginia.

## FACTS

7.     Defendant Tee-Zed designs, tests, manufactures, engineers, sells, distributes markets, and supplies child safety products through its Dreambaby brand, including but not limited to Dreambaby safety catches. Tee-Zed holds itself out as a "global child-safety corporation" that "prides itself on manufacturing top quality durable items to ensure safety, health, and comfort of every young family."

8.     Prior to the events giving rise to this cause of action, defendant Tee-Zed engaged Lowe's to display and sell for retail purchasers, Dreambaby safety catches. At all relevant times, defendant Lowe's displayed Dreambaby safety catches, along with an assortment of child safety home products. In so doing, defendant Lowe's failed to offer any safer alternatives suitable for installation in drawers.

9. According to Tee-Zed product literature, Dreambaby safety catches are specifically intended to be installed in cabinets and drawers that may contain harmful objects, in order to keep children out of harm's way. As illustrated below, Dreambaby safety catches function through the use of a hook (attached to the inside of the cabinet and/or drawer), which is intended to be "caught" by a safety catch (attached to the inside edge of the frame), such that the cabinet and/or drawer cannot be fully opened.



10. To fully open a cabinet and/or drawer equipped with a Dreambaby safety catch, the user must depress the hook in a downward direction in order for the hook to disengage and clear the safety catch.

11. According to Tee-Zed's marketing materials, Dreambaby safety catches are "completely childproof, ensuring your child's safety and your peace of mind." The product packaging information which contains the subject Dreambaby safety catches purports to "childproof cabinets and drawers."

12. Following the March 19, 2014 birth of their minor daughter, T.J., but prior to July 6, 2017, plaintiffs Tonya Justice and Matthew Justice purchased the subject Dreambaby safety

4

catch from the defendant Lowe's in Beckley, West Virginia, in order to prevent T.J. from accessing kitchen drawers containing harmful items. Plaintiffs purchased the subject Dreambaby safety catch based upon representations made by defendants that that subject Dreambaby safety catch was a reasonably safe product and completely childproof, and because it was sold by what plaintiffs once believed to be a reputable source for child safety products. Upon information and belief, the subject Dreambaby safety catch was the only child safety catch product available for purchase at defendant Lowe's store in Beckley, West Virginia which purported to be suitable installed for the purpose of "child proofing" drawers.

13. Upon information and belief, at the time the subject Dreambaby safety catch was designed, manufactured, and sold, defendant Tee-Zed had conducted no such testing to verify when the product is no longer an effective deterrent to allowing access to drawers and cabinets, nor did it provide such warnings to consumers.

14. Immediately following the purchase of the subject Dreambaby safety catch, plaintiff Matthew Justice properly installed the subject Dreambaby safety catch inside the cutlery drawer in plaintiffs' home without issue, in accordance with the Tee-Zed installation instructions that accompanied the subject product.

15. From the date the subject Dreambaby safety catch was installed by plaintiff Matthew Justice until December 8, 2017, the subject Dreambaby safety catch never needed to be tightened or repaired. From the date of installation until the events giving rise to this cause of action, at no point did plaintiffs attempt to depress and/or defeat the subject Dreambaby safety catch in T.J.'s presence. Moreover, upon information and belief, from the date of installation until the events giving rise to this cause of action, T.J. never attempted to defeat the subject Dreambaby safety catch.

16. On December 8, 2017, at or around 3:00 p.m., T.J. attempted to enter her older sister's bedroom. Moments later, while T.J.'s father answered an incoming phone call, T.J. returned to set out to play a prank on her sister by which T.J. believed would lock her sister in her room. With the electrical tape in hand, T.J. realized she was unable to tear it with her bare hands. T.J. went to the cutlery drawer to grab something sharp to cut the electrical tape. Without having ever opened the cutlery drawer in the past, and without ever attempting to defeat the subject Dreambaby safety catch in the past, T.J., who was 3 years and 8 months old and approximately forty pounds in weight, defeated the safety catch and opened the cutlery drawer with ease. T.J. then opened the cutlery drawer and grabbed a chef's knife. A moment later, as T.J. attempted to cut the electrical tape, the knife was pulled in a direction toward her face and eventually slipped and stabbed her right eye.

17. Moments later, plaintiff Matthew Justice observed his daughter holding her hand against her right eye. Once T.J.'s eye was revealed to her father, a long gaping gash was discovered along T.J.'s right iris, and T.J. was unable to see. T.J.'s parents transported T.J. to Family Healthcare in Beckley, and upon viewing T.J.'s injury, a helicopter was immediately called to transport T.J. to Charleston CAMC. With both eyes blindfolded, T.J., who had never ridden or flown anywhere without her parents, was asked to ride in the helicopter without the company of her parents, who were forced to drive, and was so terrified that she vomited almost the entire flight. Upon arriving at CAMC, T.J. was informed that she needed to be immediately flown to WVU Eye Institute in Morgantown, West Virginia. T.J. once again boarded a helicopter while blindfolded so that immediate surgery could be performed on her right eye.

18. As a direct and proximate result of defendants' acts and/or omissions, plaintiffs' minor daughter, T.J. suffered severe trauma, along with serious and permanently disabling

6

injuries, including but not limited to a ruptured globe, aphakia of the right eye, anterior and posterior synechiae of the right eye, and epiretinal membrane of the right eye, all of which have severely impaired T.J.'s vision from her right eye. T.J. has undergone numerous procedures and unsuccessful surgeries to restore her vision, but there remains a high probability that T.J.'s vision from her right eye will be permanently impaired, and T.J. may have to wear bifocals for the rest of her life. In addition to the injuries referenced herein, plaintiffs' minor daughter has further incurred and sustained the following past and future damages:

    a. physical pain and suffering;

    b. mental anguish and suffering;

    c. future physical impairment;

    d. loss of capacity to enjoy life;

    e. medical expenses past and future;

    f. scarring and disfigurement;

    g. annoyance and inconvenience; and

    h. punitive damages.

## COUNT I
## STRICT PRODUCT LIABILITY

19. The plaintiffs repeat and incorporate by reference the allegations contained in the above paragraphs as if set forth fully herein.

20. The defendants designed, engineered, manufactured assembled, rebuilt, modernized, sold, serviced, distributed, marketed and/or placed into the stream of commerce the subject Dreambaby safety catch, which was used by the plaintiffs' minor daughter in a manner for which it was designed, engineered, manufactured, marketed, and sold by the defendants.

21. The subject Dreambaby safety catch used by plaintiffs' minor daughter, T.J., was defective from the time it was designed, manufactured, marketed, and sold until T.J. was severely injured by virtue of its defective and/or not reasonably safe design, when used as intended, which failed to prevent a 3 year 8 month old child from fully opening a cutlery drawer equipped with the subject Dreambaby safety catch, despite having never witnessed anyone else ever attempt to defeat the subject Dreambaby safety catch, nor having ever attempted to defeat the subject Dreambaby safety catch herself in the past. Defendants had actual knowledge of the subject Dreambaby safety catch's defective design that was a proximate cause of the harm for which recovery is sought.

22. At the time that the subject Dreambaby safety catch left the control of defendants, safer alternative designs existed which would have made the subject Dreambaby safety catch safer and would have prevented T.J. from being able to defeat the safety catch and access the cutlery drawer without substantially impairing the subject Dreambaby safety catch's subject utility. These safer alternative designs were economically and technologically feasible at all times relevant.

23. The subject Dreambaby safety catch was further rendered not reasonably safe because it did not provide warnings commensurate with the gravity of the hazards presented by using the subject Dreambaby safety catch with defects, including the subject Dreambaby safety catch's inability to prevent children of similar age and size of T.J. from fully opening drawers equipped with the subject Dreambaby safety catch. Defendants failed to provide these warnings to consumers, either at or after the time that the subject Dreambaby safety catch left defendants' control. Furthermore, the subject Dreambaby safety catch was rendered not reasonably safe because Tee-Zed's warning to "[d]iscontinue use when child is able to open it" is inadequate

insofar as it fails to provide an age and/or weight of the child as a guideline to when the product should be discontinued, and it encourages adults to use the product up until a point where their child demonstrates he or she is capable of defeating the product. However, by the time the child has demonstrated such a capability, it is too late, as he or she has already potentially exposed him or herself to hazardous objects, which is what happened to T.J.

24. A reasonably prudent manufacturer should have included adequate warnings about the hazards with using the subject Dreambaby safety catch with defects as described above at the time the product was made.

25. Users of the subject Dreambaby safety catch, such as plaintiffs, did not know and should not have been expected to know of the subject Dreambaby safety catch's inability to prevent children of similar age and size of T.J. from fully opening drawers equipped with the subject Dreambaby safety catch.

26. As a direct and proximate result of the defective design associated with the foreseeable use of the subject Dreambaby safety catch, and defendants' failure to warn plaintiffs of the subject Dreambaby safety catch's defect, the defendants are strictly liable to the plaintiffs for the injuries and damages described herein.

## COUNT II
## BREACH OF WARRANTY

27. The plaintiffs repeat and incorporate by reference the allegations contained in the above paragraphs as if set forth fully herein.

28. The defendants, at all times material hereto, by and through the sale of the subject Dreambaby safety catch, expressly and impliedly warranted to users through their actions, representations, promises, affirmations, promotions, product literature, photographs and promotional material, to all prospective consumers and the public generally, including plaintiffs,

that the subject Dreambaby safety catch, which the defendants designed, engineered, manufactured, assembled, rebuilt, modernized, sold, serviced, supplied, marketed and/or distributed was of such quality and reasonably fit for the purpose of serving as a safe child safety product.

29. The defendants breached their express and implied warranties of fitness and merchantability by defectively designing, manufacturing, assembling, building, modernizing, selling, servicing, supplying, marketing and/or distributing defective and/or not reasonably safe safety catches, including the subject Dreambaby safety catch. At the time of the events giving rise to this cause of action, the subject Dreambaby safety catch was not reasonably safe for the use to which it was intended as reflected throughout the defendants' actions, representations, promises, affirmations, promotions, product literature, photographs and promotional materials.

30. Plaintiffs and plaintiffs' minor daughter, T.J made use of the subject Dreambaby safety catch as alleged herein, and relied on the express and implied warranties made by the defendants through their actions, representations, promises, affirmations, promotions, product literature, photographs, and promotional material that accompanied the subject Dreambaby safety catch.

31. The defendants further breached their express and implied warranties of fitness and merchantability by failing to warn and/or instruct users, purchasers, the public, and others, including plaintiff, concerning the dangerous characteristics, manufacturer's labels, warnings or instructions of the subject Dreambaby safety catch when used in a reasonably foreseeable manner.

32. As a direct and proximate result of the defendants' breach of warranties arising out of the sale and marketing of the subject Dreambaby safety catch, plaintiffs' minor daughter, T.J., sustained the injuries and damages described herein.

## COUNT III
## NEGLIGENCE

33. The plaintiffs repeat and incorporate by reference the allegations contained in the above paragraphs as if set forth fully herein.

34. The defendants owe a duty of care commensurate to the gravity of harm presented to those individuals who use its products in a way that is reasonably foreseeable to defendants, including young children and infants like plaintiffs' minor daughter, T.J. did on December 8, 2017. Defendants owe these individuals a duty to use reasonable care in manufacturing, re-manufacturing, modifying and/or altering, fabricating, designing, packaging, shipping, selling, servicing, and/or distributing the subject Dreambaby safety catch, and to protect them from unreasonable harm in the ordinary and foreseeable use of its products.

35. Defendants breached this duty and were negligent in the following acts or omissions:

   a. the defendants negligently manufactured, re-manufactured, modified and/or altered, fabricated, designed, packaged, shipped, sold, serviced, and/or distributed the subject Dreambaby safety catch in such condition that it failed to perform in the manner for which it was intended;

   b. the defendants negligently manufactured, re-manufactured, modified and/or altered, fabricated, designed, packaged, shipped, sold, serviced, and/or distributed the subject Dreambaby safety catch in a manner so that it could not be used in a safe manner;

   c. the defendants negligently caused to place into the stream of commerce the subject Dreambaby safety catch in a manner so eminently dangerous and inherently defective that users of the

   subject Dreambaby safety catch could not appreciate the dangers associated with its use; and

  d. the defendants failed to make reasonable inspections and tests, and failed to instruct, warn, and/or follow reasonable quality control procedures to discover the defects, dangers, and hazards presented by the subject Dreambaby safety catch which the defendants manufactured, re-manufactured, modified, and/or altered, fabricated, designed, packaged, shipped, sold, serviced, and/or distributed.

36. As a direct and proximate result of the defendants' negligence, plaintiffs' minor daughter, T.J., sustained the injuries and damages described herein.

## COUNT IV
## LOSS OF FILIAL CONSORTIUM

37. The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 36 of this Complaint as if set forth herein verbatim.

38. As a further direct and proximate result of the conduct and actions of the defendants as described herein, plaintiffs have been deprived of the loss of society, companionship, and consortium of their daughter, T.J., and have incurred out of pocket expenses as a result of and related to the injuries sustained as described herein..

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand judgment against the defendants for such an amount as will be determined by a jury according to the laws of the State of West Virginia, including compensatory damages, punitive damages for defendants' intentional, fraudulent, malicious and/or reckless indifference to the safety of the plaintiffs' minor daughter, T.J., pre-judgment and post-judgment interest, reasonable costs, attorney's fees, and for such other relief as the Court may deem just and proper.

**A JURY TRIAL IS DEMANDED.**

                                              **MATTHEW JUSTICE and TONYA JUSTICE, individually and as parents, guardians, and next of friends of T.J., a minor,**
By Counsel

/s/ L. Lee Javins, II
L. Lee Javins, II (WVSB No. 6613)
Taylor M. Norman (WVSB No. 13026)
BAILEY JAVINS & CARTER LC
213 Hale Street
Charleston, West Virginia 25301
Telephone: (304) 345-0346
Facsimile: (304) 345-0375
ljavins@bjc4u.com
tnorman@bjc4u.com